CURLEE v. STATE.

No. A-11336. June 20, 1951.

(233 P. 2d 312.)

John Cochran, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. William R. Curlee was charged in the court of common pleas of Tulsa county with possession of certain tax-paid intoxicating liquor, with the unlawful intent to sell the same. The defendant filed a motion to suppress the evidence on the ground that the search warrant was a blanket warrant, and testimony was heard on the motion on three different days. After the testimony was completed, the court overruled defendant's motion to suppress, and it was thereafter stipulated that the testimony introduced on the motion to suppress could be considered by the court on the trial, and also that the defendant had a Federal liquor license. The court thereupon found the defendant guilty as charged, and sentenced him to 60 days in the county jail and to pay a fine of $200. From this judgment and sentence, the defendant has appealed.

Brief was filed on behalf of the defendant October 7, 1950, and the case was submitted November 29, 1950, at which time the state was given 20 days to file a brief. No brief has been filed by the state, and we assume that the Attorney General is unable to defend this cause.

Only two witnesses testified, Deputy Sheriff Roy Rains, who conducted the search, and Tom Collins, county surveyor of Tulsa county. The search warrant was not introduced, but witness Roy Rains read from the same. It called for the search of "a certain four-room frame house, garage, and all other buildings located on the west one-half of the southwest one-quarter of section 12, township 21, range 12, in Tulsa County, Oklahoma." It named W. R. (Bill) Curlee and John Doe as the persons whose premises were to be searched.

Deputy Rains testified that the search warrant described an 80-acre tract, but he did not know whether there were two sets of improvements or not. He did say that he actually searched the white house supposed to be on the lands described, and he did admit that there was a small red house about 150 or 200 yards south of the white house. Witness was further asked:

"Q. Do you know Bill Curlee? A. I do now. Q. Well on the day of the execution of this search warrant, did you know where he lived? A. Well not of my own knowledge, only what I learned from others."

Concerning the house on the 80 acres that was actually searched, the evidence shows that no one was at home. Officer Rains said:

"Well the house that we actually searched your Honor, that is the main part of it, runs tall, as tall as a two-story house and it is a frame structure that faces the west, faces the highway, and the kitchen comes out, it is in the form of an 'L' shape, like that, and the house, the front of it is about two stories, and there is just an attic up over the kitchen and there is a room on the south where the people can live, and then there is a stone garage, where the contraband that was found was located, and that is about thirty feet northeast of this kitchen, at the white house. And then right to the south of there back, I did not step it to see how far, but right there is a hay barn facing the west, well in the neighborhood of 150 feet, no that would be about 150 yards from the white house was this red house, and we walked down there. I told your Honor we walked down there, and officer Colvin stopped right there and we talked to the boy there and asked where his father was, and he told me he worked in Tulsa, and this boy was about 14 or 15 years old and I asked him about his parents."

Mr. Rains did not testify that he served the search warrant on anyone, but testified: "I knew of, had knowledge that he [the defendant] lived over at Red Fork, but he had possession of a place, at these premises, the premises where I was going."

Concerning the visit of officer Rains to the red house, he was asked by the defense attorney:

"Q. Well there is another family lives there? A. I asked him who lived there and he told me, and I do not recall, and then I asked him where his father worked and he told me that he lived—or that he worked down at Tulsa some place, and I do not know just where."

Evidently this was the John Doe mentioned in the warrant.

Tom Collins, the county surveyor, testified that there were two residences located on the 80 acres in question, one house painted white, and some outhouses, and south of the white house some 350 feet there was a red house. He did not go into either house and did not know how many rooms they contained.

We conclude from the evidence that the affidavit and warrant described lands containing two sets of improvements and occupied by two different families. No one was present at the house searched at the time of the search, but at least part of the family was present at the red house, where the officers made inquiries but which they did not search.

On the record before us, we are convinced that the search and seizure in this case was under a "blanket" search warrant, and that the motion of the defendant to suppress the evidence should have been sustained. 22 O. S. 1941 § 1226; 37 O. S. 1941 § 84; Linthicum v. State, 66 Okla. Cr. 327, 92 P. 2d 381; Wallace v. State, 89 Okla. Cr. 365, 208 P. 2d 190.

The judgment of the lower court is accordingly reversed and the cause remanded, with directions to dismiss.

BRETT, P. J., and JONES, J., concur.